**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**

| | |
|---|---|
| MERITAGE HOMES OF GEORGIA, INC. and PARAN HOMES, LLC, | |
| Plaintiffs, | CASE NO. _____ |
| v. | |
| JACKSON COUNTY WATER AND SEWERAGE AUTHORITY, | |
| Defendant. | |

## COMPLAINT

Meritage Homes of Georgia, Inc. ("Meritage") and Paran Homes, LLC ("Paran") (collectively, "Plaintiffs") file this Complaint against the Jackson County Water and Sewerage Authority ("JCWSA"), respectfully showing the Court as follows:

### I.    INTRODUCTION

Georgia's Development Impact Fee Act ("DIFA") establishes procedures and requirements that local government entities must follow when implementing development impact fees. JCWSA completely ignored and flagrantly violated DIFA when it implemented new impact fees in Jackson County (the "County"). Nevertheless, JCWSA charged Plaintiffs the new impact fees, costing them well

- 1 -

over $5 million in illegal and invalid fees. JCWSA's actions violated Georgia law and Plaintiffs' rights under the United States Constitution.

## II.   JURISDICTION & VENUE

1.

Meritage is a foreign profit corporation with its principal place of business at 18655 North Claret Drive, Suite 400, Scottsdale, AZ, 85255.

2.

Paran is a domestic limited liability company with its principal place of business at 20 Mansell Ct, E., Suite 100, Roswell, GA, 30076.

3.

JCWSA is a political subdivision of the State of Georgia.  JCWSA may be served with process through Chris Nichols, Chairman of the JCWSA Board of Directors, at 70 Authority Avenue, Jefferson, Georgia 30549 or wherever he may be located.

4.

This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5.

Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) because the properties that are the subject of this action are located in the Northern District of

Georgia and because a substantial part of the errors and omissions that give rise to the claims occurred in this district.

### III.   FACTUAL BACKGROUND

**A.   JCWSA Significantly Increases Water and Sewer Connection Fees in Jackson County.**

6.

JCWSA was created as a political subdivision of the State of Georgia by an act of the Georgia General Assembly in 1986 to facilitate providing water and sewer service to citizens of the County.   See Jackson County Water and Sewerage Authority, *About Us*, https://jcwsa.com/about-us (last visited July 10, 2025).

7.

JCSWA sets the connection fees for newly constructed homes and buildings to connect to the water and sewer systems of the County.

8.

Effective April 11, 2024, JCWSA implemented a revised water and sewer connection fee schedule (the "2024 Fee Schedule") which dramatically increased the cost of connection fees.[1]

---

[1] A true and correct copy of the JCWSA's Revised Fee Schedule is attached hereto as Exhibit 1.

9.

The 2024 Fee Schedule established a water connection fee of $9,500 per ¾" meter and a sewer connection fee of $10,000 per equivalent residential unit (the "Connection Fees").

10.

The prior fee schedule had a water connection fee of $4,000 per ¾" meter and a sewer connection fee of $5,600 per equivalent residential unit.

11.

The 2024 Fee Schedule represents a roughly 240% increase in water connection fees and an almost 200% increase in sewer connection fees.

B.   **JCWSA Applies the Connection Fees to Plaintiffs.**

12.

Meritage is developing a residential subdivision in the County known as Preserve at Mountain Creek.

*[Space intentionally left blank]*

- 4 -

13.

JCWSA charged Meritage water and sewer connection fees for each lot at Preserve at Mountain Creek per the 2024 Fee Schedule. Meritage paid these fees on 95 lots for a total of $1,870,550[2] in connection fees.

14.

Prior to the 2024 Fee Schedule, the total for the 95 lots would have been $930,050, a difference of $940,500.

15.

Paran is developing several residential projects in the County known as Poplar Row, Southwind, and Traditions of Braselton.

16.

JCWSA charged Paran water and sewer connection fees for each lot at Poplar Row per the 2024 Fee Schedule. Paran has paid these fees on 95 lots for a total of $1,870,550.[3]

---

[2]The connection fees paid per lot are comprised of the water connection fee, the sewer connection fee, a $50 sewer inspection fee, a $40 administrative fee, and a $100 deposit. Under the 2024 Fee Schedule, the price per lot for water and sewer connection is therefore $19,690. Under the prior fee schedule, the price per lot for water and sewer connection was $9,790. All totals referenced herein include the $50 sewer inspection fee, $40 administrative fee, and $100 deposit per lot.
[3] Paran has 9 lots left at Poplar Row for which it needs to pay the water and sewer connection fees. At the $19,690 rate per connection, this will total $177,210.

17.

Prior to the 2024 Fee Schedule, the total for the 95 lots would have been $930,050, a difference of $940,500.

18.

JCWSA also charged Paran water and sewer connection fees for each lot at Southwind per the 2024 Fee Schedule. Paran has paid these fees on 73 lots for a total of $1,437,370 in connection fees.[4]

19.

Prior to the 2024 Fee Schedule, Paran would have paid $714,670 total for the 73 lots at Southwind, a difference of $722,700.

20.

JCWSA also charged Paran water connection fees for each lot at Traditions of Braselton per the 2024 Fee Schedule. Paran paid these fees on five lots for a total of $48,450[5] in water connection fees.

---

[4] Paran has 51 lots left in Southwind for which it needs to pay the water and sewer connection fees. At the $19,690 rate per connection, this will total $1,004,190.
[5] This total is comprised of the $9,500 water connection fee, $50 sewer inspection fee, $40 administrative fee, and $100 deposit.

21.

Prior to the 2024 Fee Schedule, Paran would have paid $20,950[6] total for the five lots at Traditions of Braselton, a difference of $27,500.

**C.    The Georgia Development Impact Fee Act Applies to JCWSA's Imposition of the New Connection Fees.**

22.

DIFA, O.C.G.A. § 36-71-1 *et seq.*, establishes minimum standards for the adoption of development impact fees.  O.C.G.A. § 36-71-1(b)(3).

23.

Impact fees are one-time fees imposed by a local government on a new or proposed development project to pay for all or a portion of the costs of providing public services to that new development. See City of Atlanta, GA, *Development Impact Fee Program*, https://www.atlantaga.gov/government/departments/city-planning/impact-fees (last visited June 12, 2025).

24.

If a governmental entity imposes hook-up or connection fees on new or existing users as a condition of water or sewer service to pay for system improvements, then the imposition of such connection fees is subject to the impact fee procedures and requirements delineated in DIFA. O.C.G.A. § 36-71-13(c).

---

[6] This total is comprised of the $4,000 water connection fee, $50 sewer inspection fee, $40 administrative fee, and $100 deposit.

25.

DIFA defines "governmental entity" as "any water authority, water and sewer authority, or water or waste-water authority created by or pursuant to an Act of the General Assembly of Georgia."  O.C.G.A. § 36-71-2(11).

26.

"JCWSA was created . . . by an act of the Georgia General Assembly in 1986 to facilitate providing water and sewer service to citizens of Jackson County." See Jackson County Water and Sewerage Authority, *About Us*, https://jcwsa.com/about-us (last visited July 10, 2025).

27.

JCWSA is a governmental entity as defined by DIFA.

28.

"System improvements" are defined as "capital improvements that are public facilities and are designed to provide service to the community at large, in contrast to 'project improvements.'"  O.C.G.A. § 36-71-2(20).

29.

"Project improvements" are defined as "site improvements and facilities that re planned and designed to provide service for a particular development project." O.C.G.A. § 36-71-2(15).

30.

"Capital improvement" is defined as "an improvement with a useful life of ten years of more, by new construction or other action, which increases the service capacity of a public facility." O.C.G.A. § 36-71-2(1).

31.

JCWSA documents demonstrate that JCWSA uses the Connection Fees to fund system improvements.

32.

JCWSA's Water and Wastewater Rate Study 2024 (the "Rate Study"), attached hereto as Exhibit 2 and incorporated by reference herein, explains that JCWSA implemented the Connection Fees to fund the expansion of JCWSA's water and sewer infrastructure as set forth in JCWSA's Capital Improvement Plan ("CIP").

33.

The Rate Study states:

- Growth . . . has required JCWSA to consider additional capacity sooner than planned. A significant CIP is the driving factor for future system cost and required increases in rates, fees and charges. (Ex. 2, Rate Study, Executive Summary, at i).
- In April 2024, the JCWSA approved an increase in . . . connection fees for both the water and wastewater system . . . These increases were implemented based on initial CFM runs showing a need for 10% increases in both water and wastewater customer charges each year for the next 5 years. These increases are needed to maintain a sufficient debt coverage ratio for projected debt payments planned for the CIP. The impact of this would allow a 5% rate increase in January 2025

- 9 -

rather than the 10% originally projected. (Ex. 2, Rate Study, Executive Summary, at iii).

- **JCWSA plans to spend over $800 million on system expansion to serve new customers**. Some minor projects include upsizing existing facilities; however, the bulk of the CIP is in the expansion of the Bear Creek Water Treatment Plant and extensive distribution enhancements **to increase capacity**. Also, the wastewater treatment plant expansions are specific to new capacity. (Ex. 2, Rate Study, System Development Charges, at 16).

- The JCWSA is about to embark on a greater than $800 million master plan for both water and wastewater. The needs are driven by significant growth and construction cost inflation. The capacity needed for water will double and wastewater capacity needs more than triple. **The funds needed for the CIP will require increases in both connection fee and rate revenues**. The following is the expected CIP and fund source for the next 5 years. **Development charges will be able to fund about 1/3 of the capital program** with existing and new customers funding the remaining 2/3.  (Ex. 2, Rate Study, Findings and Recommendations, at 43).

34.

JCWSA's February 2024 Wastewater Master Plan Presentation (the "Master Plan Presentation"), attached hereto as Exhibit 3 and incorporated by reference herein, similarly demonstrates that JCWSA implemented the Connection Fees to make developers pay for system improvements as opposed to the rate payers:

- Ultimately the master plan is used to set connection fees for future development so that the rate payers don't subsidize development.  (Ex. 3, Master Plan Presentation, at 6).
- **Developers should pay for new infrastructure with connection fees**. (Ex. 3, Master Plan Presentation, at 19).
- The coming rate study will have some sharp increases to connection fees.  (Ex. 3, Master Plan Presentation, at 19).
- Cheap sewer connection fees will encourage high density and the burden will be placed on the rate payers.  (Ex. 3, Master Plan Presentation, at p. 19).

- 10 -

35.

JCWSA imposed the Connection Fees to pay for system improvements.

36.

Because the Connection Fees were imposed by a governmental entity to pay for system improvements, the Connection Fees are subject to the procedures and requirements of DIFA.

**D.    JCWSA's Imposition of the Connection Fees Violated DIFA in Multiple Ways.**

1.    The Connection Fees are not consistent with the County's CIE.

37.

When a governmental entity imposes connection fees to pay for system improvements, the imposition of such fees "shall be consistent with the capital improvement element of the comprehensive plan." O.C.G.A. § 36-71-13(c).

38.

Furthermore, before impact fees can be assessed, municipalities and counties must adopt a comprehensive plan containing a capital improvements element. O.C.G.A. § 36-71-3(a).

39.

A "capital improvements element" sets out projected needs for system improvements, a schedule of capital improvements, and a description of anticipated funding sources for each improvement. O.C.G.A. § 36-71-2(2).

- 11 -

40.

Jackson County has a 2022 Capital Improvements Element (the "2022 CIE"), attached hereto as Exhibit 4.

41.

JCWSA has not implemented a separate capital improvements element.

42.

The 2022 CIE only addresses the cost of system improvements (i.e. impact fee calculations) for public safety facilities related to emergency services, parks and open space, and roads. (Ex. 4, 2022 CIE, at ii).

43.

The 2022 CIE did not address the cost of system improvements for water and wastewater treatment facilities or address water and wastewater treatment facilities at all.

44.

Because the 2022 CIE does not address water and wastewater treatment, the Connection Fees cannot be consistent with the County's capital improvement element.

45.

JCWSA violated DIFA by not passing connection fees consistent with the County's capital improvement element.

2.      The Connection Fees were not approved by the County's Board of Commissioners.

46.

The imposition of connection fees by a governmental entity "shall be subject to the approval of each county . . . which appoints the governing body of such entity." O.C.G.A. § 36-71-13(c).

47.

The Jackson County Board of Commissioners ("BOC") appoints JCWSA's five-member governing body. See Jackson County, Georgia, Municipal Code, Part I, Art. III, § 2(b).

48.

Therefore, JCWSA needed the approval of the BOC before imposing the Connection Fees.

49.

JCWSA did not obtain approval from the BOC before imposing the Connection Fees.

50.

JCWSA violated DIFA by not obtaining BOC approval for the Connection Fees.

3.      JCWSA did not establish a DIFA Advisory Committee.

51.

A government entity adopting an impact fee program "shall establish a Development Impact Fee Advisory Committee" to "assist and advise the governing body of the . . . county with regard to the adoption of a development impact fee ordinance." O.C.G.A. § 36-71-5(a), (c).

52.

JCWSA did not establish an advisory committee before imposing the Connection Fees.

53.

By not establishing an advisory committee before imposing the Connection Fees, JCWSA violated DIFA.

4.      JCWSA did not hold duly noticed public hearings before imposing the Connection Fees.

54.

Prior to imposing an impact fee, a governmental entity must hold two duly noticed public hearings regarding the proposed fees, with the second hearing held at least two weeks after the first hearing.  O.C.G.A. § 36-71-6.

55.

JCWSA did not hold any public hearings before imposing the Connection Fees.

- 14 -

56.

JCWSA imposed the Connection Fees, effective immediately, during the April 11, 2024 meeting of the JCWSA Board.[7]

57.

JCWSA violated DIFA by not holding two duly noticed public hearings before implementing the Connection Fees.

5.    The Connection Fees are not calculated and imposed on the basis of service areas.

58.

"Development impact fees shall be calculated and imposed on the basis of service areas." O.C.G.A. § 36-71-4(b).

59.

A "service area" is a geographic area defined by a county in which a defined set of public facilities provide service to development within the area.

60.

JCWSA imposes the Connection Fees uniformly throughout the County.

61.

JCWSA did not define service areas or calculate the Connection Fees on the basis of such service areas.

---

[7] A true and correct copy of the minutes of the April 11, 2024 JCWSA Board Meeting is attached hereto as Exhibit 5.

62.

JCWSA violated DIFA by not defining service areas or calculating the Connection Fees on the basis of such service areas.

6.  The Connection Fees are not calculated on the basis of levels of service for water and wastewater.

63.

Development impact fees "shall be calculated on the basis of levels of service for public facilities that are adopted in the municipal or county comprehensive plan that are applicable to existing development as well as the new growth and development." O.C.G.A. § 36-71-4(c).

64.

"Level of service" is "a measure of the relationship between service capacity and service demand for public facilities in terms of demand to capacity ratios, the comfort and convenience of use or service of public facilities, or both." O.C.G.A. § 36-71-2(12).

65.

The Georgia Department of Community Affairs ("DCA") explains how to calculate "level of service" through its publication "How to Address Georgia's Impact Fee Requirements" (the "DCA Guide").[8]

---

[8] A true and correct copy of the DCA Guide is attached hereto as Exhibit 6 and is incorporated by reference herein.

- 16 -

66.

Calculating "level of service" to comply with DIFA means inventorying existing levels of service for each public facility, adopting a level of service standard for each public facility to guide fee calculations, and apportioning the capacity added for each public facility to serve new growth and development based on the adopted level of service.  O.C.G.A. §§ 36-71-4(c) and 36-71-2(8); Ex. 6, DCA Guide at 5, 22.

67.

JCWSA's "2.95" level of service, as derived from Jackson County's Comprehensive Plan 2050, fails to conform to DIFA's requirements, as interpreted by the DCA.

68.

JCWSA merely pulled its "level of service" from Jackson County's Comprehensive Plan, which in turn generated the figure from the United States Census Bureau.

69.

Calculating "level of service" to comply with DIFA requires a far more rigorous approach, including inventorying existing levels of service for each public facility, adopting a level of service standard for each public facility to guide fee calculations, and apportioning the capacity added for each public facility to serve

- 17 -

new growth and development based on the adopted level of service. O.C.G.A. §§ 36-71-4(c) and 36-71-2(8); Ex. 6, DCA Guide, 5, 22.

70.

JCWSA therefore violated DIFA by not calculating the Connection Fees on the basis of levels of service.

7.    The JCWSA did not provide credits for Jackson County's SPLOST water project funding.

71.

"Development impact fees shall be calculated on a basis which is net of credits for the present value of revenues that will be generated by new growth and development based on historical funding patterns and that are anticipated to be available to pay for system improvements, including taxes, assessments, user fees, and intergovernmental transfers." O.C.G.A. § 36-71-4(r).

72.

The credits described by O.C.G.A. § 36-71-4(r) are known as "revenue credits."

73.

Conceptually, new growth and development cannot pay twice for the same facility, once through impact fees and again from new revenue generated. Yet, Jackson County's "Fiscal Year 2021 Report on Projects Funded through Special

Purpose Local Option Sales Tax" (the "FY21 SPLOST Report")[9] suggests that is exactly what the JCWSA has done here—the County's FY21 SPLOST Report shows it collected over $9 million for "water projects" from 2017 to 2021.

74.

To the extent Jackson County's SPLOST funded system improvements that are also now being funded by the JCWSA's connection fees, the JCWSA has violated O.C.G.A. § 36-71-4(r) by failing to provide revenue credits for the same.

## IV.    CAUSES OF ACTION

### COUNT I
### DECLARATORY JUDGMENT UNDER 28 U.S.C. § 2201 THAT JCWSA VIOLATED DIFA AND THE CONNECTION FEES ARE THUS INVALID

75.

Plaintiffs incorporate Paragraphs 1 - 74 as if fully stated herein.

76.

JCWSA's imposition of the Connection Fees was subject to DIFA.

77.

JCWSA's imposition of the Connection Fees violated DIFA in the following ways:

---

[9] A true and correct copy of the FY21 SPLOST Report is attached hereto as Exhibit 7 and is incorporated by reference herein.

- 19 -

- The Connection Fees are inconsistent with the County's 2022 CIE;

- The Connection Fees were not approved by the BOC;

- JCWSA did not establish an advisory committee before imposing the Connection Fees;

- JCWSA did not hold two duly-noticed public hearings before imposing the Connection Fees;

- The Connection Fees were not calculated or imposed on the basis of service areas;

- The Connection Fees were not calculated or imposed on the basis of levels of service;

- JCWSA did not provide revenue credits for the Connection Fees.

78.

Plaintiffs seek declaratory relief pursuant to 28 U.S.C. § 2201 in the form of a declaration that because JCWSA's imposition of the Connection Fees was subject to DIFA yet violated DIFA in multiple ways, the Connection Fees are invalid and unenforceable against Plaintiffs and that Plaintiffs are entitled to a refund of the money they paid toward the invalid Connection Fees.

79.

There is a bona fide, actual, present, practical need for the declaration, as there is a present, ascertained, or ascertainable state of facts regarding some power,

privilege, or right of Plaintiffs dependent upon the facts and/or law applicable to the facts.

80.

Plaintiffs have an actual present, antagonistic, and adverse interest in the subject matter, and all such interests are before the Court or will be before the Court upon proper process.

81.

The relief sought is not merely the giving of legal advice by the Court or the answer to questions propounded by curiosity.

82.

If the Court does not declare that the Connection Fees are invalid under Georgia law, Plaintiffs will be subject to JCWSA's illegal imposition of the Connection Fees and the substantial amounts of money Plaintiffs paid toward said fees will be unjustly retained by JCWSA.

83.

Based on the Court's declaration and pursuant to 28 U.S.C. § 2202, Plaintiffs further seek the necessary and proper relief of interlocutory and permanent injunctive relief enjoining JCWSA from collecting and retaining the illegal and invalid Connection Fees.

## COUNT II
## RELIEF UNDER 42 U.S.C. § 1983 FOR VIOLATION OF RIGHT TO PROCEDURAL DUE PROCESS – UNITED STATES CONSTITUTION

84.

Plaintiffs incorporate Paragraphs 1 - 74 as if fully stated herein.

85.

No state may deny any person of property or liberty without due process of law.  U. S. Const. Amend. XIV.

86.

42 U.S.C. § 1983 provides a cause of action for violation of the right to procedural due process under the Fourteenth Amendment to the United States Constitution.

87.

Governmental conduct that deprives persons of a property or liberty interest via actions unauthorized by law violates the constitutional guarantee of due process of law.

88.

Plaintiffs have a property interest in their money and a liberty interest in being free from unauthorized and arbitrary government action.

89.

Notice and an opportunity to be heard are fundamental to the concept of procedural due process.

90.

JCWSA implemented the Connection Fees without any notice to Plaintiffs. Plaintiffs had no opportunity to be heard on the Connection Fees before being subjected to them.

91.

Furthermore, JCWSA implemented the Connection Fees in violation of DIFA.

92.

DIFA contains explicit mandatory language as to how local governments must implement impact fees.

93.

DIFA places substantial limitations on the discretion of local governments about how they implement development impact fees.

94.

Under DIFA, a local government's constituents could reasonably expect the local government to follow DIFA's procedures and requirements when implementing impact fees.

95.

JCWSA's imposition of the Connection Fees without notice and in violation of DIFA deprived Plaintiffs of their property interest in their money and their liberty interest in being free from unauthorized and arbitrary government action.

96.

JCWSA's conduct was fundamentally without authority and constitutionally inadequate.

97.

As a result of JCWSA's conduct, Plaintiffs were and are subject to further unlawful fees, and an injunction is the only means of protecting their constitutional procedural due process rights.

98.

JCWSA's imposition of the Connection Fees will cause Plaintiffs irreparable harm in the form of depriving them of their property.

99.

Plaintiffs have no adequate remedy at law.

100.

The Court should enjoin JCWSA from collecting and retaining the Connection Fees because they are unconstitutional, unlawful, and void.

101.

There is no harm that will result to the JCWSA in enjoining it from enforcing the Connection Fees, as JCWSA can still collect connection fees under the prior fee schedule or under another fee schedule that conforms to the requirements of Georgia law and federal constitutional due process protections.

- 24 -

102.

Further, it is within the best interest of the public to ensure JCWSA is enjoined from enforcing the Connection Fees so that the public is not subject to unconstitutional, unlawful, and void fees.

103.

The public interest favors an injunction because it is in the public interest to prevent governmental entities from acting when they lack the authority to do so.

104.

Plaintiffs therefore seek interlocutory and permanent injunctive relief in the form of an order enjoining JCWSA from collecting the Connection Fees because they violate Plaintiffs' procedural due process rights.

## COUNT III
## RELIEF UNDER 42 U.S.C. § 1983 FOR VIOLATION OF RIGHT TO SUBSTANTIVE DUE PROCESS – UNITED STATES CONSTITUTION

105.

Plaintiffs incorporate Paragraphs 1 - 74 as if fully stated herein.

106.

No state may deny any person of property or liberty without due process of law. U. S. Const. Amend. XIV.

107.

42 U.S.C. § 1983 provides a cause of action for violation of the right to substantive due process under the Fourteenth Amendment to the United States Constitution by color of state law.

108.

Governmental conduct that deprives persons of property or liberty interests via actions unauthorized by law violates this constitutional guarantee of due process of law.

109.

Plaintiffs have a property interest in their own money.

110.

JCWSA's imposition and collection of the Connection Fees deprived Plaintiffs of their property rights.

111.

JCWSA's conduct was fundamentally arbitrary and capricious.

112.

JCWSA deliberately did not follow the procedures and requirements of DIFA, instead choosing its own procedure and reasoning for the imposition of the Connection Fees.

113.

JCWSA's imposition of the Connection Fees was without any rational basis because JCWSA arbitrarily calculated the Connection Fees instead of calculating them based on service areas and levels of service, as required by DIFA, and because the Connection Fees are not consistent with the County's 2022 CIE.

114.

As a result of JCWSA's conduct, Plaintiffs are subject to substantial unlawful Connection Fees, and an injunction is the only means of protecting their constitutional substantive due process rights.

115.

JCWSA's imposition of Connection Fees will cause Plaintiffs irreparable harm in the form of depriving them of their property.

116.

Plaintiffs have no adequate remedy at law.

117.

The Court should enjoin JCWSA from collecting and retaining the Connection Fees because they are unconstitutional, unlawful, and void.

118.

There is no harm that will result to the JCWSA in enjoining it from enforcing the Connection Fees as JCWSA can still collect connection fees under the prior fee

- 27 -

schedule or under another fee schedule that conforms to the requirements of Georgia law and federal constitutional due process protections.

119.

Further, it is within the best interest of the public to ensure JCWSA is enjoined from enforcing the Connection Fees so the public is not subject to unconstitutional, unlawful, and void fees.

120.

The public interest favors an injunction because it is in the public interest to prevent governmental entities from acting when they lack the proper authority to do so.

121.

Plaintiffs therefore seek interlocutory and permanent injunctive relief in the form of an order enjoining JCWSA from collecting the Connection Fees, as they are a violation of Plaintiffs' substantive due process rights.

**COUNT IV**
**RELIEF UNDER 42 U.S.C. § 1983 FOR VIOLATION OF THE TAKINGS CLAUSE – UNITED STATES CONSTITUTION**

122.

Plaintiffs incorporate Paragraphs 1 - 74 as if fully stated herein.

123.

No person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U. S. Const. Amend. V.

124.

42 U.S.C. § 1983 provides a cause of action for violation of the takings clause under the Fifth Amendment to the United States Constitution.

125.

JCWSA imposed the Connection Fees for a public purpose, i.e. to pay for system improvements to the County's water and sewer facilities.

126.

The Connection Fees are arbitrary, unreasonable, and excessive.

127.

There is no connection or proportionality between the amount of the Connection Fees and the social costs of the development of Plaintiff's properties.

128.

JCWSA's imposition of the Connection Fees on developments on Plaintiffs' properties dramatically reduces the value of Plaintiffs' properties and interferes with Plaintiffs' investment-backed expectations.

129.

The imposition of the Connection Fees is a taking of Plaintiffs' personal property without just compensation in violation of the Fifth Amendment of the United States Constitution.

130.

As a result of JCWSA's conduct, Plaintiffs are entitled to damages in an amount to be proven at trial.  At a minimum, Plaintiffs are entitled to refunds of the difference in connection fees they have paid since the 2024 Fee Schedule took effect on April 11, 2024, and what they would have paid under the prior fee schedule.

## <u>COUNT V</u>
## <u>ATTORNEYS' FEES AND EXPENSES PURSUANT TO 42 U.S.C. § 1988</u>

131.

Plaintiffs incorporate Paragraphs 1 - 74 as if fully stated herein.

132.

If Plaintiffs are prevailing parties, they are entitled to reasonable attorneys' fees and expenses pursuant to the 48 U.S.C. § 1988 because of JCWSA's unconstitutional and unlawful actions alleged herein.

WHEREFORE, having fully stated their Complaint against JCWSA, Plaintiffs respectfully request that the Court enter the following relief in their favor:

    a. declaratory judgment that the Connection Fees are invalid under Georgia law and may therefore not be collected or retained;

- 30 -

b.  interlocutory and permanent injunctive relief enjoining JCWSA from imposing, collecting, and retaining the Connection Fees;

c.  damages for the taking of Plaintiffs' private property;

d.  Plaintiffs' attorneys' fees and expenses;

e.  all such other relief as the Court may deem just and appropriate; and

f.  hold a trial by jury on all issues so triable.

Respectfully submitted this 25th day of July, 2025.

/s/ *Troy R. Covington*
Simon H. Bloom
Georgia Bar No. 064298
Troy R. Covington
Georgia Bar No. 190949
Emily W. Molinié
Georgia Bar No. 962767

BLOOM PARHAM, LLP
977 Ponce de Leon Avenue, NE
Atlanta, GA  30306
Tel    (404) 577-7710
Fax:  (404) 577-7715
sbloom@bloom-law.com
tcovington@bloom-law.com
emolinie@bloom-law.com

*Counsel for Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that I have prepared the foregoing COMPLAINT in compliance with Local Rule 5.1 in Times New Roman 14-point font.

This 25th day of July, 2025.

/s/  Troy R. Covington
Troy R. Covington
Georgia Bar No. 190949
tcovington@bloom-law.com

BLOOM PARHAM, LLP
977 Ponce de Leon Avenue, NE
Atlanta, GA  30306
Tel    (404) 577-7710
Fax:   (404) 577-7715

*Counsel for Plaintiffs*